## CITY OF BLOOMINGTON
## v.
## A. R. RICHARDSON.

*Municipal Corporations — Ordinances — Public Meetings — Salvation Army—Police Power.*

1. The settled rule of construction requires that effect to be given to every word in a penal statute which is used to describe the offense, if any can be given, reasonably and con‚istently with the other language employed.

2. Whether a meeting is a public meeting according to the common understanding, will depend upon its intended composition, and generally, if not essentially, upon its object. It must be open to the general public, and to make the opportunity general, some notice of the time and place, intended and adapted to reach the public generally, must be given, and it must have for its object the consideration or accomplishment of some subject or object which is of interest to the public.

3. In an action based upon municipal ordinances touching gatherings upon streets, and their obstruction, the defendant therein being a member of the "Salvation Army," this court declines, in view of the evidence, to interfere with the verdict for the defendant.

· [Opinion filed May 27, 1890.]

APPEAL from the Circuit Court of McLean County; the Hon. A. SAMPLE, Judge, presiding.

Mr. A. E. DE MANGE, City Attorney, for appellant.

The primary object of streets in cities is for ordinary passage and travel. Stack v. City of E. St. Louis, 85 Ill. 377; Dil. Munic. Corp., Sec. 730 and note 1; The King v. Carlile, 6. C. & P. 636, opinion of the court by Park, J., p. 645; Barker v. Commonwealth, 19 Pa. St. 412.

But it is contended that the people "in this free government of ours" have a right peaceably to assemble for any lawful purpose. This is undoubtedly true. They have such right to assemble in any appropriate place, but a public street is not an appropriate place. A street is for ordinary business traffic and travel, and not for holding meetings; and the gen-

eral public pay taxes to keep it in repair for that purpose, and not for the purpose of enabling a small section—a very small section—of the public, who pay little, if any, taxes, to monopolize its use and divert it from its true use and primary object. Every street meeting or parade is an extraordinary use of the street, and such use is by sufferance of the public, and the public, through its constituted authorities, has the inherent right to regulate and control such use.    But it was contended by the court below, in his ruling excluding a part of the ordinance, that the city council has no right to give the chief executive officer of the city the power to withhold or grant a permit for such meeting or parade.    In other words, that the city council has no such power to permit and refuse, and, therefore, can not delegate it to the mayor.

There are many instances in which a like power has long been delegated by city councils to executive officers of cities, and they have never been questioned—such as permits to use a part of a street for the storing of materials for erecting buildings, to remove buildings from one location to another through a street, to dig drains across a street, all cases of street obstructions and of diverting a street from its ordinary and usual use—a power just as liable to abuse by the officers intrusted with it as is the power to grant or refuse a permit to obstruct a street with a parade or a meeting, religious, political or otherwise.    Such power must be lodged somewhere, and where better than in the hands of the mayor, the chief executive officer of the city, who is, by the laws of the State, charged with the duty of executing the law and exercising the police power granted to every municipality for the purpose of insuring safety to the public upon the streets, and who is responsible to the people and must answer to them for all abuses of power in the annual municipal election.

An ordinance or statute providing that certain acts upon the streets shall be unlawful without a permit from the mayor or governor, is a reasonable and valid law.    Lowell v. Simpson, 10 Allin (Mass.) 88; Pedrick v. Heaton, 12 Gray, 161; Dunn v. People, 94 Ill. 140; State v. White, 5 At. Rep. 828.

Messrs. TIPTON & PEIRCE, for appellee.

The court erred as against appellee in holding that any part of the amended ordinance was valid. The objections to the ordinance are clearly stated by the learned judge who tried the case at the Circuit Court. Anderson v. City of Wellington, 19 Pac. Rep. p. 719; Frazee's Case, 30 N. W. Rep. p. 72; Richards v. Dutot, 7 Pa. St. 431; Village of Des Plaines v. Poyer, 123 Ill. 348.

Cities may regulate, but can not prohibit; and the regulation must be reasonable and apply alike to all classes. An ordinance can not be valid for a time and invalid for a time, just as the whim of a mayor or city council may direct, and cities or municipalities can not delegate their power. See in support of this doctrine, East St. Louis v. Wehrung, 50 Ill. 28; Dillon on Municipal Corporations, 108-9; Bibel v. The People ex rel., 67 Ill. 172; Gillett v. Logan Co. et al., 67 Ill. 256; Village of Crotty v. People ex rel., 3 Ill. App. 469; Hickey v. Chi. & W. Ind. R. R. Co., 6 Ill. App. 172; Foss v. City of Chicago, 56 Ill. 354.

That a city can not prohibit, it can only regulate street parades, and that each regulation must apply to all alike, see Sweet v. Wabash, 41 Ind. 7; McConnel v. Jersey City, 39 N. J. L. 38; Bronson v. Oberlin, 41 Ohio St. 476; Austin v. Money, 16 Pick. 121; Duckwoll v. New Albany, 25 Ind. 283; Shallcross v. Jeffersonville, 26 Ind. 193.

PLEASANTS, P. J.  On complaint before a justice of the peace that " A. R. Richardson and Narmie Richardson did violate Sec. 1, Art. 3, Chap. 11, of the revised ordinances of said city as amended by ordinance approved August 17, 1888, also Sec. 10, Art. 2, Chap. 13, of the revised ordinances of said city," appellee was fined $5; but upon a trial by jury, on appeal, was acquitted.

The provisions of the ordinances referred to are as follows:

" Sec. 1. The streets and alleys of the city of Bloomington shall be kept free and clear of all obstructions, encumbrances and encroachments, for the use of the public, and no traction engine or other machine of like character shall be run by steam, or except by horse or mule power, upon the

streets of said city, and no parade, civic or military, with or without band or other music, and no public gathering or meeting of any kind for any purpose, and no beating of drum or drums, or playing of any instrument or instruments, of any kind, tending to the obstruction thereof or the gathering of a crowd of people thereon, shall be permitted upon the public streets or public grounds of said city, except a written permit therefor be first obtained from the mayor."

" Sec. 10. The congregating of persons on the sidewalks of the city so as to obstruct free passage is hereby expressly forbidden."

And Sec. 13 provides that " whoever violates, disobeys, omits, neglects or refuses to comply with any of the provisions of this chapter shall, upon conviction, be subject to a fine of not less than $5, nor more than $100 for each and every offense."

It was shown that while others of the Salvation Army were holding a meeting at a place designated for it by the mayor, appellee and his wife left them and went out without knowing whither they were going, to labor elsewhere, and that on reaching Main street on the side of the public square, they proceeded without notice to pray and sing and testify. During these exercises a considerable number of persons, most of whom had stopped in passing apparently to observe them, stood upon the adjacent sidewalks, creating more or less of an obstruction to them. Appellee was kindly told by the captain of police that he was violating the ordinance and advised to go away, but refused, and a few minutes thereafter was arrested.

The point mainly relied on for a reversal of the judgment is that the Circuit Court held so much of said Sec. 1 as relates to parades and public gatherings or meetings to be void, and refused to admit it in evidence. It is manifest that the prosecution under that section was based on the clause relating to such meetings, and the question argued is upon the propriety of the ruling mentioned.

The meaning of the city council, whatever it was in respect to these meetings, is not entirely clear, but we are inclined to

take a view of the provision not suggested in the opinion of
the court—which appears in full in the record—or in the argu-
ment here.

The gatherings or meetings against which the prohibition
runs are limited to those of a certain kind or class, on places
also of a certain kind or class. They are described as "public,"
without further qualification, and the places as the "public
streets or public grounds of said city."

This implies, and truly enough, that a private meeting may
be held on a public place and a public meeting on a private
place. If, in the sense of the ordinance, a meeting is necessarily
public when held on a street, the term "public," also used to
describe the meeting intended, would be without effect. But
the settled rule of construction requires that effect be given
to every word—and especially to every word in a penal statute
—which is used to describe the offense, if any can be given
reasonably and consistently with the other language employed.
Moreover this ordinance, by a different clause, provided against
the gathering of crowds on these places, seeming thereby to
distinguish between crowds in general and the particular kinds
referred to in the one here under consideration.

The latter, then, would embrace only what are "public
meetings," according to the common understanding. Whether
a meeting is such according to that understanding, we appre-
hend will depend primarily and essentially upon its intended
composition, and generally, also, if not essentially, upon its
object. It must be open to the general public, that is, to all
who may have the opportunity and desire to attend it. To
make the opportunity general, some notice of the time and
place, intended and adapted to reach the public generally,
must be given. We apprehend also that it should have for
its object the consideration or accomplishment of some sub-
ject or object which is of interest to the public as such. In
short, a public meeting is a meeting of the public, actual or
potential, which implies both the interest and the notice men-
tioned. Hence, where the occasion suddenly arises, as a fire
or street accident, and people gather from individual curiosity
or a disposition to serve as circumstances may require; or

where the occasion is anticipated and publicly advertised, as a baloon ascension or exhibition of fire works from a proper place, and people gather at other places, though on the streets, for individual convenience, to see it; or where a mountebank, hawker or religious exhorter, by his performances on the street, attracts a ring of persons for his own purpose, whether selfish or benevolent, to induce individual action on the part of those present, without reference to any object of interest to the public as such—these are not public meetings or gatherings, in any proper sense.

The question is not whether they would or would not be as great nuisances in fact as public meetings of the same size and duration, but whether they would be public meetings in the sense of the ordinance. Certainly they interfere in the same way, to the same extent and quite as needlessly, with the right of the public to the legitimate use of the street; but do they come within the letter of this particular provision?

If appellee had beaten a drum or played any instrument as a means of causing the gathering that actually occurred, he would clearly have been within the clause relating to "crowds," but it would not have changed the character of the gathering. That would have been no less a "crowd" and no more a "public" meeting or gathering.

We are of opinion that it was competent for the city in the exercise of its police power to prohibit public meetings or gatherings on its streets without a permit from the mayor, and therefore that the ruling of the court in excluding this provision of the ordinance was an error. But it did no harm, because there was no evidence tending to prove an offense within the meaning of that provision, as we understand it.

If, however, the true construction would apply it to all "meetings or gatherings of any kind or for any purpose upon the public streets or public grounds of said city," then because it makes no distinction, nor enables the court to make any between such meetings, on any ground, we think it not a rightful exercise of the police power, but unauthorized, unreasonable and void.

Nor was there any evidence tending to prove a case under

Sec. 10, which forbids, not the causing or procuring of a congregation, but a "congregating of persons on the sidewalks of the city." Appellee did not congregate on the sidewalk. It does not appear that he was on the sidewalk at any time after the gathering commenced until he was arrested.

*Judgment affirmed.*